## John M. Mackay *vs.* Saint Mary's Church.

A. died in Connecticut, and letters of administration on his estate were taken out in Connecticut.    There were no claims in Rhode Island against the estate of A.

*Held,* that the Connecticut administrator could transfer and indorse a promissory note due the estate of A. so as to enable the indorsee to bring suit on the note in Rhode Island.

Promissory notes given to two joint administrators for a debt due to the estate of the intestate may be transferred and indorsed by one of the administrators.

A. died in Connecticut, and B. and C. were appointed administrators of his estate both in Connecticut and New York.

*Held,* that the administrators could in New York make a good transfer of a note due the estate of the intestate, although by reason of the intestate's domicil they were liable to account in Connecticut for the proceeds of the transfer.

B. and C. were appointed in Connecticut and New York administrators of A., who died domiciled in Connecticut.    Two notes were given to the administrators by a debtor of A.'s estate in Rhode Island for the amount due the estate.    After the notes became due the debtor made part payment to C., arranging to settle the whole debt thereafter.    Then B., in New York, transferred the notes to D. in payment of a debt due from the estate of A., and D. notified the Rhode Island debtor of the transfer.    Subsequently the Rhode Island debtor made an additional payment to C., taking from him a general release under seal.

*Held,* that D. could recover in Rhode Island from the Rhode Island debtor the amount due on the notes when D. received them.

A promissory note in the ordinary form given by a corporation had on it when produced in court a paper seal.    No vote of the corporation authorized the seal ; the note did not purport to be under seal ; the seal was not the corporate seal ; and the treasurer of the corporation, who was a witness in the case, did not admit putting it on the note.

*Held,* that the seal must be disregarded as " mere excess."

DEBT.    Heard by the court, jury trial being waived.    The facts found are stated in the opinion of the court.

*W. W. & S. T. Douglas,* for plaintiff.

*Charles E. Gorman & Ambrose Feeley,* for defendant.

An executor, under the laws of one state, cannot indorse a note so as to enable the indorsee to sue in another state.    *Bibb* v. *Skinner,* 2 Bibb, 57 ; *Sanford* v. *Mickles & Forman,* 4 Johns. Rep. 224 ; *Thompson* v. *Wilson,* 2 N. H. 291 ; *Dial* v. *Gray,* 14 S. Car. 573 ; *Stearns* v. *Burnham,* 5 Me. 261 ; *Carmichael* v. *Ray,* 1 Rich. 116 ; *Cutter* v. *Davenport,* 1 Pick. 81 ; *Dawes* v. *Boylston,* 9 Mass. 337.

A note or obligation to joint payees cannot be transferred by one, but must be indorsed and transferred by all of them.    This rule is applicable to notes made payable to joint administrators. *Sanders* v. *Blain's Administrators,* 6 J. J. Mar. 446 ; *Smith* v. *Whiting,* 9 Mass. 334 ; *Sanford* v. *Mickles,* 4 Johns. Rep. 224 ;

1 Daniel Neg. Instr. §§ 370, 370 *a*, 683, and 684; 2 Parsons Notes & Bills, 5, 6; *Brown* v. *Dickinson*, 27 Grat. 693; *Carvick* v. *Vickery*, Dougl. 653; *Watson* v. *Evans*, 1 H. & C. 662; *Ryhiner* v. *Feickert*, 92 Ill. 305.

James Duffy, administrator, had the right to collect and compromise the claims and to release the defendants. Schouler Executors and Administrators, § 400, n. *i.*; 2 Daniel Neg. Instr. § 1289.

Kelly's transfer was as administrator in New York, as security for a debt contracted as such administrator; while he held the note as administrator in Connecticut, where William E. Duffy resided and died, and it was inventoried as a part of the Connecticut estate, where it was found. He therefore had no interest in the notes as administrator in New York.

The seal upon the note of June 25, 1878, destroyed its negotiability. 1 Daniel Neg. Instr. §§ 31, 32. *Conine* v. *Junction & B. R. R. Co.* 3 Houston, 289; *Clegg* v. *Lemessurier*, 15 Grat. 108; *Mann* v. *Sutton*, 4 Rand. 253; *Hopkins* v. *Railroad Co.* 3 W. & S. 410; *Clark* v. *Farmers' Manufac. Co.* 15 Wend. 256; *Parks* v. *Duke*, 2 McCord, 380; *Lewis* v. *Wilson*, 5 Blackf. 370; *Helfer* v. *Alden, Cutter & Hull*, 3 Minn. 332; *Warren* v. *Lynch*, 5 Johns. Rep. 239.

*July* 18, 1885. STINESS, J.   The plaintiff sues, as indorsee, upon two notes given by the defendant corporation to William H. Kelly and James Duffy, administrators upon the estate of William E. Duffy. It is admitted that William E. Duffy died in Connecticut; that these persons were appointed administrators in Connecticut, and also in the State of New York, where both of them reside; and that the defendant corporation, by its treasurer duly authorized, gave the notes in the settlement of a debt admitted to be due from the corporation to the estate of William E. Duffy. April 8, 1881, after the notes were due, the defendant paid $600 on account to James Duffy, one of the administrators, under an arrangement made with him to settle the whole indebtedness at a future time, for the face of the notes without interest. ·After this and before April 23, 1881, William H. Kelly, the other administrator, " for himself and James Duffy, administrators of estate of William E. Duffy, deceased," indorsed one of the notes and delivered the other, which was made payable to the plaintiff as attorney and by him indorsed in blank, to plaintiff for his fees for legal service rendered

in settlement of the estate, his bill having been subsequently allowed by the surrogate in New York, in Kelly's account, to the amount of $3,000.   Thereupon the plaintiff notified the defendant of his ownership of the notes and demanded payment.   April 30, 1881, after such notice, the defendant paid to James Duffy, administrator, $900 more, and took from him a general release, under seal, of all claims of the estate of William E. Duffy against the defendant, and particularly of the notes in question; the balance, as agreed, to be paid when Duffy should obtain and surrender the notes.

Upon this state of facts several questions arise.

*First.*  Can an executor or administrator under the laws of one state indorse a note so as to enable the indorsee to sue in another state ?

This question was fully examined and discussed in *Petersen* v. *Chemical Bank*, 32 N. Y. 21, the court sustaining such an indorsement.   So, also, in *Riddick* v. *Moore*, 65 N. Car. 382 ; *Barrett* v. *Barrett*, 8 Me. 353 ; and in *Hutchins, Adm'r*, v. *State Bank*, 12 Met. 421, the same doctrine was sustained.

While there are cases which hold to the contrary, *e. g. Thompson* v. *Wilson*, 2 N. H. 291 ; *Dial* v. *Gary*, 14 S. Car. 573 ; *Stearns* v. *Burnham*, 5 Me. 261, — the underlying considerations on which such decisions rest seem to be that an administrator's authority does not extend beyond the jurisdiction of the state in which he is appointed, and that to give effect to such an indorsement would really amount to administration in another state to the possible detriment of resident creditors.   This last consideration does not apply in the case before us, for it does not appear that there are any creditors of William E. Duffy in this State.

Upon the other grounds, the cases which uphold the transfer seem to us to stand upon the better reason.   The title to a negotiable instrument passes by indorsement, and if indorsed by an administrator, who is the representative of the deceased owner, in the proper settlement of an estate and without affecting the rights of other parties, why should its effect be limited to the boundaries of the state where the deceased lived ?   Not only would this limit the negotiability of the instrument, but it would cast upon an administrator the unnecessary burden of procuring letters of adminis-

tration in another state simply to collect an admitted debt. Moreover, suppose the administrator, indorsee, and maker lived in the same state at the time of the indorsement, but that the maker subsequently removed to another state, could it be claimed that the indorsee would be barred from suing in the second state because his title came through an administrator who would himself be incapable of bringing suit in that state ? Yet the elements of title, in the case supposed, would be the same as in the case in question. We see no reason why the residence of the maker should affect or control the plaintiff's title or his right to sue. The right of action is transitory ; the holder of a note must collect of the maker where he can find him. If, therefore, as against the maker, the holder's title to a note is good, his right of action should be good also. We therefore hold that, in a case like this, in which no interests but those of the parties to the note are involved, — and we say this without passing upon the effect of a transfer when there are creditors in this State, — an administrator in another state may transfer a note upon which the indorsee may sue in this State.

*Second.* Can a note given to two joint administrators be transferred by one of them ? There is no question that one of two executors or administrators may transfer notes held by the deceased, for the reason that the several persons are considered as holding one office, and, in the settlement of the estate, the act of one is equivalent to the act of all ; the power of the office may be fully exercised by one, for each takes the whole in his representative capacity, and not a moiety. *Stone* v. *Union Savings Bank*, 13 R. I. 25. When, therefore, administrators, in collecting assets, take a note payable to themselves as administrators, though the form of the obligation be changed, its character is the same ; it is still a debt due to the estate, not to them personally, and its proceeds are assets of the estate. We see no reason, therefore, why the same rule should not apply as though the obligation remained in its original form. The case is quite different from the ordinary case of joint payees, who may have adverse interests, and where each is entitled to hold his moiety of the obligation until he sees fit to part with it. In the ordinary cases of joint payees, excepting of course copartnerships, neither one represents the other ; one alone, therefore, cannot transfer a note without the other. But

where one represents the whole, as a partner or an administrator, the rule should follow the reason. And thus it has been held in *Bogert* v. *Hertel,* 4 Hill N. Y. 492, where the cases upon this point were carefully examined. See, also, 1 Daniel Negotiable Instruments, § 268, and 1 Parsons Notes & Bills, 159. Most of the cases to which we have been referred by the defendant are cases of individual joint payees and cases of partners after dissolution. In *Sanders et al.* v. *Blain's Administrators,* 6 J. J. Mar. 446, the court said that the administrator and administratrix might have sued jointly or individually, but as the administrator had undertaken to act individually, not as administrator, he could not transfer the note without the other payee. *Smith* v. *Whiting,* 9 Mass. 334, is commented on in *Bogert* v. *Hertel.* In the present case the notes were given for different amounts, and in different tenor, for a debt due to the estate represented by the administrators. They were, therefore, assets of the estate, and, as such, we hold that they could be dealt with as other assets of the estate by either administrator.

*Third.* Could the administrators in New York transfer in that State a note on which, by reason of the domicil of the intestate, they were accountable in Connecticut? If the administrators in New York were not the same as the administrators in Connecticut, clearly they could not, for in that case the property in the notes would not have passed to them. But they were the same persons. Under their dual authority they had the whole of the estate. The transfer does not show in which capacity Kelly claimed to act. We do not think that the mere fact that he acted in New York, though he might ultimately be accountable in Connecticut, rendered his act invalid. The validity of an administrator's act depends upon its character rather than upon the locality where it is done. Judge Story, in *Trecothick* v. *Austin,* 4 Mason, 16, 35, says: "A will bequeathing personal estate conveys that property wherever it may be situated, if the will is made according to the law of the place of the testator's domicil. And it has never been supposed that it was indispensable to the assertion of a title, derived under such will, that there should be a probate in every place where such property was situated." In this case, as also in *Hutchins, Adm'r,* v. *State Bank,* 12 Met. 421, transfers of property by foreign

executors were recognized. In *Wilkins* v. *Ellett*, 9 Wall. 740, a payment to a foreign administrator was held to be good against an administrator afterwards appointed in the state where the debtor resided. Many cases might be cited where payments of debts outside of the jurisdiction of the court appointing the representative have been upheld.

In *Shakespeare* v. *Fidelity*, &c. *Co.* 97 Pa. St. 173, it was held that United States coupon bonds, deposited with the defendant for safe keeping, were properly delivered, in Philadelphia, to a foreign executor. Very often the powers given to executors by wills are broader than those which the law gives to an administrator, and most of the cases on this point relate to executors. But with reference to the settlement of the estate their powers and duties are the same. In either case, however, the letters testamentary of an executor have no greater extra-territorial force than letters of administration. What an executor can do, as the representative of the deceased, regardless of special powers, an administrator may do. In the recent case of *McCord et al.* v. *Thompson et als. Adm'rs*, 92 Ind. 565, it was held that a note given to administrators in Illinois, for goods sold, made payable in Indiana, could be collected by the administrators in the latter State, even against the claim of an administrator appointed in Indiana. If an executor or administrator can dispose of property outside of the jurisdiction where he is appointed, there is no good reason why he should be required to be within the limits of the jurisdiction when he makes the transfer. In many cases it may be quite necessary for him to be present at the place where the property is, in order to carry out the transfer.

From this review of the law, it appears that the notes could be legally transferred from Kelly, as administrator, to the plaintiff. From the testimony it appears that they were transferred for adequate consideration in part payment of a claim, which was subsequently passed upon and allowed, for a larger sum than the amount of the notes, by the surrogate in New York. While the evidence shows that the transfer was made by Kelly as soon as he learned that his coadministrator, Duffy, had taken steps to collect the notes and that it may have been made to prevent Duffy from getting the proceeds of the notes into his hands, still we cannot, sim-

ply from this, infer that it was fraudulent, when it appears to have been made upon good consideration, and with immediate notice to the defendant. The testimony shows that the transfer of the notes to the plaintiff was talked over at the time of the settlement, April 30, 1881. A payment made after such notice could not avail as against the plaintiff, who then held the notes and who had demanded payment.

One more question remains. A paper seal was pasted upon one of the notes, and the defendant claims that this made it non-negotiable. The vote of the corporation did not authorize the treasurer to make a note under seal; the note itself does not purport to be under seal; it is not the seal of the corporation, and the treasurer, who has been a witness, did not state that it was his seal, or that he put it on. In other respects it is in the form of an ordinary negotiable promissory note. We think, therefore, that we must consider the paper, as suggested by plaintiff's counsel, "a piece of unnecessary ornament," or, in the words of *Jones* v. *Horner*, 60 Pa. St. 214, disregard "the seal as a mere excess."

We conclude, therefore, that the plaintiff is entitled to recover the amount due upon the notes when they came into his hands.                                    *Judgment for plaintiff.*